IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 17-20007-JAR-3 |
| KAREN ORTEGA, | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Karen Ortega's Motion for Compassionate Release (Doc. 333) under 18 U.S.C. § 3582(c)(1)(A). The motion is fully briefed, and the Court is prepared to rule. For the reasons provided below, the Court grants Defendant's motion.

**I.   Background**

On February 5, 2019, Defendant pleaded guilty to one count of conspiracy to possess with intent to distribute 50 or more grams of methamphetamine where individuals under the age of Eighteen reside, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii), 846 and 860a, and 18 U.S.C. § 2.[1] On October 6, 2020, this Court sentenced Defendant to a 168-month term of imprisonment, a 60-month term of supervised release, and a $100 special assessment.[2]

Defendant is currently incarcerated at FMC Lexington in Kentucky. The Bureau of Prisons ("BOP") reports that 572 inmates have tested positive for COVID-19 out of 1,165

---

[1] Doc. 155.
[2] Doc. 288.

inmates tested at this facility.³ The BOP further reports that there are two active staff cases and no active inmate cases at this facility.⁴ To date, 347 staff members and 1,029 inmates at FMC Lexington have been fully vaccinated against COVID-19. Defendant is herself now fully vaccinated against COVID-19. Defendant is 44 years old, and her projected release date is September 6, 2029.

On June 7, 2021, Defendant filed a *pro se* motion requesting compassionate release due to her underlying medical condition of obesity, her Latin ethnicity, and the risk of severe complications or death should she contract COVID-19 while in prison. She contends that Latin Americans are at a higher risk to suffer severe problems from COVID-19 compared to white people. She also appears to raise arguments for relief under the First Step Act related to changes in sentencing, but her methamphetamine conviction does not entitle her to statutory sentencing reductions for crack cocaine and cocaine base offenses. Her release plan is to live with her parents in Texas, go to school for medical billing, and care for her children. She asks the Court to reduce her custodial sentence to time served.

The government opposes Defendant's motion. First, the government included additional medical records in its response that show Defendant tested positive for COVID-19 in December 2020 and was symptomatic but has not identified any ongoing health complications related to having had COVID-19.⁵ Since that time, Defendant was vaccinated, mitigating her risk of future infection. The government also disputes that Defendant's race constitutes a risk factor to a degree her underlying medical conditions do, but acknowledges that, despite her being

---

³ *COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Oct. 18, 2021).

⁴ *Id.*

⁵ Doc. 166 at 8–9, 16.

vaccinated, she has "established extraordinary and compelling reasons pursuant to CDC and/or DOJ guidelines allowing for consideration of compassionate release."[6]  Further, the government argues that numerous 18 U.S.C. § 3553(a) factors support denying defendant's motion.  Specifically, the government highlights the quantity of drugs in Defendant's possession, which included approximately 20 pounds of methamphetamine as well as notable quantities of marijuana, cocaine, and heroin.  Firearms were also found in the home where the drugs were stored, which she shared with her children and husband, a codefendant.  Based on these issues, the government asserts that Defendant still poses a danger to society if released early, and reducing her sentence would diminish the nature and seriousness of her offense and the need for the sentence to continue to provide just punishment and otherwise promote respect for the law.

      Defendant, through appointed counsel, filed a reply, contending first that the government's response predated the resurgence of the COVID-19 Delta variant, which poses a great risk even to vaccinated individuals and that an obese individual like Defendant is particularly vulnerable to severe complications from COVID-19.[7]  Defendant also notes that she suffered from alcohol abuse prior to incarceration, which is another risk factor for COVID-19 complications.  Further, Defendant indicates that her family circumstances have dramatically changed since the beginning of her incarceration.  Her children were given over to the care of her parents, and her youngest child, a fifteen-year-old, still resides with her mother.  Her father died of cancer in June 2021.  In July, her mother suffered a cardiac event, which has significantly restricted her ability to care for Defendant's son.  No other individuals can assist.  She argues that this establishes independent extraordinary and compelling circumstances warranting

---

[6] *Id.* at 15
[7] Doc. 339 at 3–4.

compassionate release. She asserts that she is not a danger to society, that the U.S. Probation Office has approved her release plan, and that two codefendants, Sheila Best and Mary Dunkin, have been granted compassionate release with comparably long sentences (216 and 168 months).[8] She requests a sentence reduction of time served and modification of supervised release to home confinement, which would allow her to care for her mother and her child.

## II. Legal Standard

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but th[at] rule of finality is subject to a few narrow exceptions."[9] "One such exception is contained in [18 U.S.C.] § 3582(c)(1)."[10] Section 3582(c)(1)(A), as amended by the First Step Act of 2018,[11] permits a court to reduce a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[12] The court may grant a motion for sentence reduction only if: (1) "extraordinary and compelling reasons" warrant a sentence reduction, (2) such a reduction is consistent with "applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors set forth in 18 U.S.C. § 3553(a) support such a reduction.[13] The court may deny a § 3582(c)(1)(A)

---

[8] *See* Doc. 318 (Dunkin's sentence of 48 months reduced to time served); Doc. 332 (Best's sentence of 216 months reduced to time served, with an extension of her term of supervised release from 60 months to 120 months and modification of terms such that the first 60 months of her term are served in home detention).

[9] *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)).

[10] *Id.*

[11] Pub. L. No. 115-391, 132 Stat. 5194.

[12] 18 U.S.C. § 3582(c)(1)(A); *see also Maumau*, 993 F.3d at 830–31.

[13] *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).

motion "when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do[es] not need to address the others."[14]

## III.   Discussion

### A.   Exhaustion

The Tenth Circuit recently held that § 3582(c)(1)(A)'s exhaustion requirement is a claim-processing rule that the government may waive or forfeit.[15]  Here, the government does not contest that Defendant has met the exhaustion requirement.   The Court the considers this argument waived and proceeds to the merits.

### B.   Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) requires a district court to find that "extraordinary and compelling reasons warrant a sentence reduction" before it may grant a § 3582(c)(1)(A) motion.  The court has "the authority to determine for [itself] what constitutes 'extraordinary and compelling reasons.'"[16]  While that authority "is bounded by the requirement . . . that a reduction in sentence be consistent with applicable policy statements issued by the Sentencing Commission," the Sentencing Commission has not yet issued a policy statement "applicable" to § 3582(c)(1)(A) motions filed by a defendant.[17]  Accordingly, § 3582(c)(1)(A)'s consistency requirement does not currently constrain the court's discretion to consider whether extraordinary and compelling reasons warrant a sentence reduction.[18]

---

[14] *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021) (emphasis omitted) (quoting *McGee*, 992 F.3d at 1043).

[15] *United States v. Hemmelgarn*, --F.4th--, 2021 WL 4692815, at *2 (10th Cir. Oct. 8, 2021).

[16] *United States v. Maumau*, 993 F.3d 821, 832 (10th Cir. 2021).

[17] *Id.* at 832, 836–37.

[18] *Id.* at 837.

Here, Defendant asserts that her circumstances constitute extraordinary and compelling reasons to reduce her sentence. She contends that her underlying health conditions of obesity and high blood pressure, coupled with the outbreak of COVID-19 in prison, make her more susceptible to serious illness or death should she contract COVID-19. The government responds that per Department of Justice policy and Centers for Disease Control and Prevention guidance, Defendant's medical conditions in the context of the COVID-19 pandemic constitute an extraordinary and compelling reason for a sentence reduction. The Court disagrees. Defendant's vaccination status mitigates her risk of severe illness if she again becomes infected with COVID-19, even accounting for the other risk factors present. Accordingly, the threat of severe complications or death from COVID-19 do not constitute extraordinary and compelling reasons to reduce Defendant's sentence.

That said, further circumstances require consideration, namely the death or incapacitation of the caregivers for Defendant's minor son. The only available caregivers for Defendant's minor son have been her parents. Defendant's father died due to complications from kidney cancer on June 15, 2021, and her mother suffered a heart attack a month later that impairs her ability to care for the Defendant's minor son. Given the timing of these events, this aspect of Defendant's request for compassionate release was only raised in her reply.

In support, Defendant attached exhibits to her reply, including her father's death certificate and a letter from a doctor's office discussing her mother's condition. The letter describes the condition and continuing treatment of Defendant's mother, Sara Gomez, and concludes "due to Ms. Gomez's current condition, financial limitations, increased emotional stress and limited ability to address her daily activities, Ms. Gomez would greatly benefit from

the assistance of her daughter, mentally, physically, emotionally and financially."[19] In light of the supporting documentation of the death of one caregiver for Defendant's minor child and the incapacitation of the other, paired with the absence of any alternative caregiver, the Court finds that the changes in Defendant's family circumstances constitute extraordinary and compelling reasons for a sentence reduction.

C. Section 3553(a) Factors

The Court next considers whether a reduction in Defendant's sentence would comply with the sentencing factors enumerated in 18 U.S.C. § 3553(a). That statutes requires courts to "impose a sentence sufficient, but not greater than necessary" in consideration of the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence[s] and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . .;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.[20]

---

[19] Doc. 339 at 15.

[20] 18 U.S.C. § 3553(a).

7

While the Court takes all seven § 3553(a) factors into account, those most pertinent to Defendant's case are: (1) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law , and provide just punishment for the offense; (2) the need for the sentence to protect the public from further crimes of the defendant; and (3) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.  In consideration of these factors, the Court concludes that releasing Defendant now would leave her with a sentence that is "sufficient, but not greater than necessary."

Defendant still faces nearly eight years of her fourteen-year custodial sentence, with five years of supervised release to follow.  Her sentence already reflects a downward departure and variance from an advisory Guideline range of life imprisonment.  As the government notes, substantial quantities of drugs as well as a firearm she procured for safety were found at Defendant's house.  The government disputes her claim to being non-violent, noting that she procured a gun and kept it in the house with her children, although there is nothing in the record to indicate she ever wielded or used the firearm.

A reduction in Defendant's sentence would not diminish the seriousness of Defendant's offenses.  She has already served almost half of her lengthy sentence, her husband remains incarcerated and is not scheduled to be released until 2036, she will be released to a lengthy term of supervised release that will significantly restrict her liberty for a long period of time, and she is being released in order to both care for a minor child and assist her incapacitated mother.  Further, she has no recorded disciplinary history while incarcerated, has taken courses over the last several years for both physical and psychological improvement, and satisfied her financial obligations.  While the government's concerns about the seriousness of Defendant's conduct and

the threat it believes she poses to the community are well taken, the Court believes that several matters mitigate any alleged risks. These include relocation to a different part of the country away from the landlord who used Defendant to house his drug supplies, the continued incarceration of her husband, her self-improvement and rehabilitative efforts while incarcerated, and the lengthy active supervision she will be under upon release.

Defendant's changed family circumstances strongly support early release, although with a modified term of supervised release. This is further supported when comparing her circumstances to those of codefendant Sheila Best. Ortega and Best both initially faced advisory Guideline sentences of life imprisonment, received offense level increases for maintaining a drug premises and possessing a firearm, and were held to be responsible for large quantities of drugs. Best had a more substantial criminal history, however. Best's 216-month sentence was reduced to time served after filing her own compassionate release motion, although her term of supervised release was doubled.

A similar approach is warranted here. Defendant's custodial sentence will be reduced to time served, but in order to ensure adequate deterrence, promote respect for the law, and ensure that Defendant's total sentence reflects the seriousness of her offenses, her term of supervised release will be extended to 120 months.[21] Accordingly, the Court grants Defendant's motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Karen Ortega's Motion for Compassionate Release (Doc. 333) is **GRANTED**. Defendant's sentence of imprisonment is reduced to time served. The Court imposes an additional 60 months of

---

[21] As Defendant is being released in order to provide care for a minor child and an incapacitated parent, the home detention modification made to codefendant Best's term of supervised release would be inappropriate and, in fact, counterproductive here.

supervised release, for a total term of 120 months. All previous imposed terms and conditions of supervised release shall remain in effect.

**IT IS FURTHER ORDERED** that there being a verified residence and an appropriate release plan in place, this Order is stayed for up to fourteen days to make appropriate travel arrangements and to ensure Ortega's safe release. Ortega shall be released as soon as appropriate travel arrangements have been made and it is safe for her to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure Ortega's safe release, then the parties shall immediately notify the Court and show cause why the stay should be extended.

**IT IS SO ORDERED.**

Dated: October 29, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
